UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EDGAR CHOC, individually and on behalf          :
of all others similarly situated,               :
                                                :
                                                :          23 Civ. 3886 (GS)
                        Plaintiff,              :
                                                :          OPINION & ORDER
        - against -                             :
                                                :
CORPORATION #1 d/b/a JIMBO'S                    :
HAMBURGER PALACE; 228 WILLIS                    :
AVENUE FOOD LLC; and MISAEL                     :
VIVAR,                                          :
                                                :
                        Defendants.            :
-------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Edgar Choc ("Plaintiff" or "Choc") brings this action against

Corporation # 1, d/b/a Jimbo's Hamburger Palace ("Jimbo's"), 228 Willis Avenue

Food LLC, and Misael Vivar (collectively, "Defendants") alleging violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor

Law § 190 *et seq.* ("NYLL").  The parties have entered into a Settlement Agreement

and Mutual Release (the "Agreement") (Dkt. No. 26) and now seek the Court's

approval of that Agreement, as required by *Cheeks v. Freeport Pancake House, Inc.*,

796 F.3d 199 (2d Cir. 2015).  The parties have consented to my jurisdiction under 28

U.S.C. § 636(c).  (Dkt. No. 25).

For the reasons set forth below, the Court agrees that the proposed economic

terms of the Agreement are fair and reasonable.  However, the Court cannot

1

approve certain non-economic terms of the Agreement, which run afoul of the public policy of the FLSA and case law in this Circuit.  Therefore, the parties' request for approval of the Agreement is denied without prejudice to the submission of a revised Agreement that excises the impermissible restrictions.

## BACKGROUND

Choc filed this action on May 9, 2023, alleging that he was employed by Defendants as a cook at Jimbo's from in or about January 2019 to on or around December 14, 2022.  (Dkt. No. 1 ("Complaint" or "Compl.") ¶ 30).  According to the Complaint, Defendants violated the FLSA and NYLL by failing to (1) pay Choc overtime compensation and minimum wages; (2) timely pay his wages; and (3) provide him with statutorily required payroll notices and wage statements.  (*Id.* ¶ 44).  Choc seeks recovery of his unpaid wages, liquidated damages, and attorneys' fees.  (*Id.* at 11-12).

Although Choc brought the case both individually and on behalf of similarly situated current and former employees of Jimbo's (*id.* ¶¶ 24-29), he did not seek to pursue the case as an FLSA collective action.  Defendants did not answer or respond to the Complaint and no formal discovery was conducted.  Instead, the parties entered into settlement negotiations and exchanged information during those negotiations.  (Dkt. No. 27 at 3).  During a telephone conference on November 8, 2023, the parties notified the Court that they had agreed to a settlement in principle.  (Docket Entry dated Nov. 8, 2023).

On December 8, 2023, the parties submitted the Settlement Agreement and Mutual Release for the Court's approval along with a joint letter ("Ltr.") seeking approval of the proposed Agreement and explaining why, in the parties' view, it is fair, reasonable, and equitable.  (Dkt. Nos. 26, 27).

## LEGAL STANDARD

In *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Second Circuit held that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor ("DOL").  *Id.* at 206.  Without judicial (or DOL) oversight, "employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the [FLSA]."  *Id.* at 205-06 (cleaned up); *see also id.* at 206 (identifying, as examples of the "potential for abuse" in FLSA settlements underscoring the need for judicial approval, "highly restrictive confidentiality provisions," "overbroad release[s]," and excessive and unsubstantiated attorneys' fee awards).

When asked for its approval, the district court must scrutinize the settlement to determine whether it is "'fair and reasonable.'"  *Mikityuk v. Cision US Inc.*, No. 21 Civ. 510 (LJL), 2022 WL 3013107, at *3 (S.D.N.Y. July 29, 2022) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).  "'The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights

brought about by an employer's overreaching.'" *Id.* (quoting *Wolinsky*, 900 F. Supp. 2d at 335).

In conducting this analysis, courts evaluate "the totality of circumstances," *id.*, including the following factors set forth in *Wolinsky* and approved by the Second Circuit:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36). In addition, where a settlement agreement provides for attorneys' fees and costs, district courts "also evaluate the reasonableness of the fees and costs." *Id.*

## DISCUSSION

### A. Settlement Amount

The Court finds that the economic terms of the proposed Agreement are fair and reasonable. Under the settlement, Defendants would pay $22,000, with $14,200 going to Choc and the remaining $7,800 to his counsel, Katz Melinger PLLC (the "Katz Firm"). (Agreement ¶ 2). According to the parties' letter, a recovery to Choc of $14,200 would represent "almost the entirety" of his unpaid wages, which is "approximately $15,835.50." (Ltr. at 2). Although the parties do not explain precisely how Choc arrived at his estimate of $15,835.50 in unpaid

wages, it appears to be a reasonable approximation in light of his allegations that he worked a 43-hour week throughout the time he was employed at Jimbo's but was only paid a fixed salary of $580 for the first year and $600 thereafter.  (Ltr. at 1-2).[1]

To be sure, as described in the parties' letter, Choc claims another $15,835.50 in liquidated damages, *see* 29 U.S.C. § 216(b), and $10,000 for Defendants' alleged failure to provide him with wage and payroll notices, for a total damages claim of approximately $41,671.  (Ltr. at 2).  But liquidated damages are not mandatory in an FLSA case even when liability is proven, *see, e.g.*, *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  More importantly, if the case proceeded to trial, Choc would have to prove his claims, including marshaling sufficient documentary or other evidence to show how many hours a week he worked—often no easy task in an FLSA case.  Defendants deny Choc's claims and assert that he was properly paid for all hours worked.  (Ltr. at 2).

Given the litigation risk that Choc could walk away with a smaller damages award or possibly no award at all, a settlement at an early stage of litigation for an amount that represents approximately 90% of his alleged unpaid wages, and 34% of his overall damages claim, is reasonable.  *See, e.g.*, *Zorn-Hill v. A2B Taxi LLC*, No. 19 Civ. 1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) ("Several courts have approved settlements that provide around one-quarter or one-third of

---

[1] The gist of Choc's unpaid wage claim is that he should have been paid for three hours of overtime a week at time and a half.  Since he was paid $15 an hour for most of the period (and presumably contends he should have been paid $15 an hour instead of $14.50 for the first year), that would have amounted to an extra $67.50 per week.  This equates to approximately $3,500 a year in unpaid overtime for each of the roughly four years he worked at Jimbo's.

total alleged damages."); *Garcia v. Cloister Apt Corp.*, No. 16 Civ. 5542 (HBP), 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) (settlement representing more than 72% of unpaid wages and 28% of total alleged damages "is reasonable, especially given plaintiffs' potential obstacles to recovery").

Moreover, Choc is represented by capable and experienced FLSA counsel, and the parties' counsel represent that the settlement was the result of extensive arm's length negotiations.  (Ltr. at 3-4).  There is no indication of fraud or collusion.  And Choc is no longer employed at Jimbo's, lessening any concern about Defendants strong-arming him into an unfavorable settlement, as such concerns "are not as relevant when the plaintiff no longer works for the defendant."  *Chen v. Dim Sum Palace Inc.*, No. 23 Civ. 2707 (AS), 2023 WL 7280669, at *2 (S.D.N.Y. Nov. 3, 2023) (citing *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (noting that the fact that plaintiffs are "no longer employees of the defendants . . . reduc[es] the danger that the release was obtained through improper job-related pressure")).

## B.  Attorneys' Fees

The Court also finds the proposed attorneys' fees and expenses to be reasonable.  Under the proposed Agreement, the Katz Firm would receive $7,100 in fees, along with $700 in reimbursement for expenses.  (Ltr. at 3).  The Katz Firm is entitled to one-third of Plaintiff's recovery under its contingency fee agreement with Choc (net of expenses) (*id.* at 3-4), and the proposed $7,100 fee represents just under one-third of the overall settlement amount.  Moreover, according to billing

records submitted by the Katz Firm, the proposed fee award represents about 48% of counsel's lodestar amount of $14,835.  (*Id.* at 4; Dkt. No. 27-2).

The proposed fees are reasonable and permissible.  *See, e.g.*, *Melendez v. Cosan Constr. Corp.*, No. 21 Civ. 7426 (BCM), 2023 WL 4238913, at *3 (S.D.N.Y. June 28, 2023) (approving proposed attorney's fee that "comes to one-third of the net settlement payment; is consistent with the contingency agreement that plaintiff signed; and represents approximately 60% of counsel's stated lodestar") (citations omitted); *Vargas v. Pier 59 Studios L.P.*, No. 18 Civ. 10357 (VSB), 2021 WL 6066088, at *2 (S.D.N.Y. Nov. 4, 2021) ("courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases").

In addition, Plaintiff's counsel has properly substantiated the $700 in expenses for which it seeks reimbursement.  (Ltr. at 3 n.1; Dkt No. 27-1).  *See Tung v. Jade Spoon Asian Cuisine Inc.*, No. 21 Civ. 10651 (AEK), 2022 WL 1315612, at *3 (S.D.N.Y. May 3, 2022) (reasonable out-of-pocket costs may be awarded in FLSA cases where counsel has substantiated the request for costs) (citation omitted).

## C.  Release

Turning to the non-economic terms of the proposed Agreement, the Court begins by noting that the release set forth in Paragraph 5 is limited to "any wage and hour violations, and related retaliation, under federal, state, and/or local law" and "all other claims that were or[] could have been asserted in this lawsuit"; Choc also covenants not to bring any other claims "regarding the payment of wages during or after employment."  This is not a broad general release of the kind courts

7

typically find unacceptable in FLSA settlements.  *See, e.g., Illescas v. Four Green Fields* LLC, No. 20 Civ. 9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021) ("In FLSA cases, courts in this District routinely reject release provisions that waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.") (cleaned up).  Rather, Paragraph 5 is limited to the type of claims asserted in this action.  As such, the Court finds the scope of the release by Plaintiff to be acceptable.  *See id.* (release limited to wage-and-hour issues and related claims that were or could have been asserted in action was "sufficiently limited in scope").

At the same time, the release is unilateral insofar as *Defendants* do not release any claims they may have against Choc, either in Paragraph 5 (which is entitled "Release of Claims by Plaintiff") or anywhere else in the Agreement. Nonetheless, courts in this District have found unilateral releases that are limited in scope to be acceptable.  *See, e.g., Cardoso v. Studio 34 Hair Solon, Inc.*, No. 19 Civ. 9684 (BCM), 2020 U.S. Dist. LEXIS 189221, at *2 (S.D.N.Y. Oct. 13, 2020) (approving settlement agreement with a "unilateral but limited release" of claims "solely concerning wage and hours matters") (cleaned up); *Aquino v. Joseph's Auto Ctr., Inc.*, No. 18 Civ. 2009 (BCM), 2020 U.S. Dist. LEXIS 64361, at *2-3 (S.D.N.Y. Apr. 10, 2020) (approving "unilateral but limited release" covering claims for "alleged unpaid wages and other related compensation and/or arising out of Plaintiff's separation of employment"); *Dolores v. Titan Constr. Servs. LLC.* No. 19

Civ. 11056 (BCM), 2021 WL 601655, at *1 (S.D.N.Y. Jan. 22, 2021) (approving "unilateral but limited release" of defendants from all "wage and hour claims").

## D. Waiver of Right to Participate in Other Actions

In addition to the release contained in Paragraph 5, Paragraph 8 provides that, "[i]f any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Releasees are a party." This provision, while limited to Plaintiff's participation in class, collective, or multi-party actions, goes beyond the wage-and-hour claims released in Paragraph 5 and extends to "*any* claim [that] is *not* subject to [that] release." (Emphasis added). By way of example only, Paragraph 8 would thus bar Choc from participating in a class or multi-party action alleging injuries from asbestos contamination at Jimbo's or the unauthorized disclosure of workers' personal identifying information.

Courts have rejected identical waiver provisions in FLSA settlements as overbroad. *See, e.g.*, *Diaz Bravo v. Broadway Fines Deli Corp.*, No. 21 Civ. 1946 (VSB), 2021 WL 4263047, at *2 (S.D.N.Y. Aug. 4, 2021) ("This waiver is overbroad because it is not 'limited to participation in a proceeding against defendants that arises under the FLSA,' and instead 'waive[s] [Plaintiff's] right to participate in all proceedings against defendants, no matter the claim,' provided they are brought on behalf of a putative class or collective.") (quoting *Yunda v. SAFI-G, Inc.*, No. 15 Civ. 8861 (HBP), 2017 WL 1608898, at *4 (S.D.N.Y. Apr. 28, 2017)); *Emrani v. Fairfield*

9

*Fam. Care, LLC*, No. 3:17 Civ. 00981 (VAB), 2017 WL 6347978, at *2-3 (D. Conn. Nov. 21, 2017) (rejecting identically-worded waiver provision because it "appears to sweep beyond a FLSA collective action"). Thus, in order for the Court to approve the proposed Agreement, Paragraph 8 will need to be excised or modified to cover only those claims released in Paragraph 5.

## E.  Non-Disparagement Clause

Paragraph 9 of the Agreement is a "Mutual Non-Disparagement" clause, in which each of the parties agrees to not "in any way maliciously disparage or defame the good name" of the other "in any forum."  While this language is less than clear, the clause goes on to clarify that nothing in Paragraph 9 "prevents Plaintiff from disclosing this Agreement, the underlying facts of his FLSA claims, and/or associated statutory rights" or "shall interfere with Plaintiff's rights pursuant to Section 7 of the NLRA."[2]  Because the non-disparagement clause is mutual and expressly permits Choc to discuss the Agreement and the facts underlying his claims, the Court finds it to be reasonable.  *See Pelico v. PGNV, LLC*, No. 18 Civ. 9761 (PAC), 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (finding a mutual

---

[2] Section 7 of the NLRA guarantees that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations . . . and to engage in other concerted activities for the purpose of . . . mutual aid or protection. . . ."  29 U.S.C. § 157.  The National Labor Relations Board has emphasized that "discussing terms and conditions of employment with coworkers lies at the heart of protected Section 7 activity" and has "repeatedly affirmed that such rights extend to former employees."  *McLaren Macomb*, 372 NLRB No. 58, 2023 WL 2158775, at *7 (2023) (citation omitted).  Maliciously defamatory statements, however, fall outside Section 7's protections.  *Three D, LLC v. NLRB*, 629 F. App'x 33, 35 (2d Cir. 2015).

non-disparagement clause with "an explicit carve out for truthful statements" was "not objectionable").

## F. Non-Publicity Clause

"The overwhelming majority of courts reject the proposition that FLSA settlement agreements can be confidential." *Zorn-Hill*, 2020 WL 5578357, at *6 (citation omitted). Although the proposed Agreement does not contain a confidentiality clause *per se*, Paragraph 10 raises similar concerns to the extent it provides as follows:

> As an inducement to Defendants for entering into this Agreement, Plaintiff represents and warrants that he will not affirmatively reach out to any news outlets or news media regarding this Agreement, the negotiations leading up to this Agreement, or this Lawsuit in general. Plaintiff further represents and warrants that he will not post on any social media platforms (including but not limited to Facebook, Instagram, Twitter/X, and LinkedIn) regarding this Agreement, the negotiations leading up to this Agreement, or this Lawsuit in general.

Paragraph 10 thus restricts Choc's ability (and, at least potentially, his counsel's ability) to communicate about the settlement and this case (1) with the news media and (2) on social media.

Courts in this District have taken varying and conflicting approaches to so-called non-publicity or "no publicity" clauses in FLSA settlements. Many courts find non-publicity provisions, as applied to both the news media and social media, to be incompatible with the FLSA's policy goals. *See, e.g.*, *Tarbell-Littman v. TFO USA Ltd.*, No. 19 Civ. 3063 (BCM), 2019 WL 13226417, at *2-3 (S.D.N.Y. Nov. 8, 2019); *Alvarez v. Schnipper Rests. LLC*, No. 16 Civ. 5779 (ER), 2019 WL 5682633, at

*3-4 (S.D.N.Y. Nov. 1, 2019); *Chung v. Brooke's Homecare LLC*, No. 17 Civ. 2534 (AJN), 2018 WL 2186413, at *2-3 (S.D.N.Y. May 11, 2018); *Sanz v. Johnny Utah 51 LLC*, No. 14 Civ. 4380 (JMF), 2015 WL 1808935, at *2 (S.D.N.Y. Apr. 20, 2015). Other courts uphold both forms of restrictions as reasonable where the plaintiff otherwise remains free to communicate about the settlement. *See, e.g.*, *Flores v. Studio Castellano Architect, P.C.*, No. 15 Civ. 9158 (TPG), 2017 WL 4417697, at *3 (S.D.N.Y. Oct. 2, 2017); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Still others distinguish between the two, deeming news media restrictions as permissible but social media restrictions as improper. *See, e.g.*, *Martinez v. Avalanche Constr. Grp. Inc.*, No. 20 Civ. 11065 (JLC), 2021 WL 5001415, at *2 (S.D.N.Y. Oct. 28, 2021); *Zorn-Hill*, 2020 WL 5578357, at *7.

After considering these and related authorities, the Court concludes that the non-publicity clause in this case is impermissibly overbroad. A primary goal of the FLSA is "to ensure 'that all workers are aware of their rights.'" *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015) (quoting *Guareno v. Vincent Perito, Inc.*, No. 14 Civ. 1635 (WHP), 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014)). "Provisions that limit a plaintiff's ability to communicate about an FLSA settlement" are, therefore, "'contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their

statutory rights.'" *Tarbell-Littman*, 2019 WL 13226417, at *3 (quoting *Lopez v. Ploy Dee, Inc.*, No. 15 Civ. 647 (AJN), 2016 WL 3637103, at *1 (S.D.N.Y. Apr. 21, 2016)).

That is true, these cases reason, even where, as here, the settlement agreement is filed publicly and Plaintiff is free to discuss the settlement with current and former co-workers. *See id.* (although non-publicity provision carved out communications with defendants' workers, "that does not end the inquiry into potential policy concerns"); *Sanz*, 2015 WL 1808935, at *2 ("Although the filing of the settlement agreement on the docket allows the public to access it, practically speaking . . . the public filing of the settlement in this case, standing alone, is unlikely to benefit the low-wage workers that the FLSA was intended to protect") (cleaned up). "[P]revent[ing] workers from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally" thus undermines the FLSA's well-established public policy. *Nights of Cabiria*, 96 F. Supp. 3d at 179-80 (cleaned up).

Relying on these principles, the court in *Cortes v. Bronx Bar & Grill, LLC*, No. 19 Civ. 2819 (SN), 2019 WL 6318430 (S.D.N.Y. Nov. 25, 2019), rejected a broad confidentiality clause, including a "prohibition on sharing information connected to the existence of or substance of the Agreement on social media," because it would "frustrate[] the FLSA's purposes." *Id.* at *2. At the same time, the court found that prohibiting the plaintiff from discussing "the amount received" pursuant to the settlement "does not raise the same concerns" because it would still enable the plaintiff to "effectively communicat[e] the existence and terms of the Agreement

13

with others in furtherance of the FLSA's purposes." *Id.* The court held it would approve an amended settlement agreement that included "a limited confidentiality provision prohibiting Plaintiff solely from disclosing the amount received" under the settlement "but not otherwise prohibiting Plaintiff from publishing truthful information about or discussing the existence or other terms of the Agreement." *Id.* at 3.[3]

The Court believes that a similar approach is warranted here. Paragraph 10 as currently drafted prohibits communications to the news media, or on social media, regarding "this Agreement" or "this Lawsuit in general." Thus, Choc would be precluded from publicizing even the existence of the settlement or truthful information about this action and his FLSA claims. Under the authorities discussed above, that sweeps too broadly. It would unduly inhibit the spread of the type of information important to helping workers vindicate their rights under the FLSA.[4] Further, the parties have presented no rationale, let alone a compelling

---

[3] This approach aligns with that taken by the National Labor Relations Board ("NLRB") in overseeing settlement agreements that fall within its ambit. In reviewing a proposed settlement that jointly resolved an FLSA case in this District and charges pending before the NLRB, the NLRB objected to a broad non-publicity clause providing that neither side "will publicize the settlement." The language of the settlement agreement was subsequently narrowed to prohibit the parties only from "publiciz[ing] the settlement sums being paid by Defendants." (*Ramirez v. M.L. Restaurant Corp.*, No. 14 Civ. 4030 (VEC) (S.D.N.Y.), Dkt. No. 192 at 1-4; Dkt. No. 193; Dkt. No. 220 at 9; *see also id.* Dkt. No. 192 at 5 (2006 memorandum from NLRB's Office of the General Counsel cautioning regional staff about "overly broad" confidentiality clauses in private settlements of NLRA claims and stating that "any prohibition that goes beyond the disclosure of the financial terms should not be approved, absent compelling circumstances")).

[4] It is noteworthy that Paragraph 10 is entitled "Representations and Warranties Regarding Other Potential Claimants or Claims"—a tacit acknowledgement that its purpose is to forestall similar FLSA suits by other Jimbo's employees. But "[i]n the context of wage-and-hour claims, the concern about 'copycat' lawsuits is not considered to be valid," as the FLSA "encourages copycat lawsuits by

14

one, for why the clause is necessary.  *See Tarbell-Littman*, 2019 WL 13226417, at

*3.  The same consequences would not follow, however, from a more narrowly

tailored restriction on Plaintiff's communicating to the news media, or on social

media, the amount he is to receive under the Settlement.  Accordingly, the Court is

constrained to reject Paragraph 10 as written, but would approve a revised clause

that limits the restrictions in the two relevant sentences to the settlement amount

(as well as negotiations leading up to the Agreement).

## CONCLUSION

For the foregoing reasons, the Court cannot approve the Agreement in its

current form.  By January 3, 2024, the parties are required to file a revised

settlement agreement with modifications to the waiver and non-publicity clauses

(Paragraphs 8 and 10) consistent with this opinion.

**SO ORDERED.**

DATED:      New York, New York
            December 12, 2023

                                        _____
                                        GARY STEIN
                                        United States Magistrate Judge

---

all those with rights to vindicate."  *Strauss v. Little Fish Corp.*, No. 19 Civ. 10158 (LJL), 2020 WL
4041511, at *8 (S.D.N.Y. July 17, 2020).